IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH SEARS            * | |
| Plaintiff, | |
| v.                      * | CIVIL ACTION NO. RDB-07-487 |
| KATHLEEN S. GREEN, WARDEN   * | |
| SGT. WEBSTER, et al. | |
| Defendants.            * | |
| ***                       | |

**MEMORANDUM OPINION**

I.   Procedural History

Plaintiff filed this 42 U.S.C. § 1983 Complaint seeking a declaratory judgment and compensatory and punitive damages claiming that on October 30, 2006, while waiting to go to breakfast, he was attacked by an unknown person in the recreation hall of Housing Unit #8 of the Eastern Correctional Institution ("ECI").  (Paper No. 1).  He alleges that hot liquid was thrown on him causing severe burns to the left side of his face, neck, shoulder, stomach, and chest.  (*Id*.). Plaintiff has raised both failure-to-protect and medical claims against Defendants.  First, he claims that ten days prior to the assault he was questioned in a supervisor's office about damaged lockers and the metal used to make weapons and Defendant Webster and a tier officer immediately conducted searches and recovered several knives.  (*Id*.)  Plaintiff alleges that Webster's actions "implied that I was an informant and was the reason for my being insulted [sic]." (*Id*.)  Plaintiff also asserts that after the assault he was taken into the hallway and questioned for several minutes rather than being taken directly to the medical department. (*Id*.).

On August 24, 2007, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment which remains unopposed as of the within signature date.  Paper No. 18. The matter is ready for consideration and may be determined without oral hearing.  *See* Local

Rule 105.6  (D. Md. 2004).  For the reasons stated below, Defendants' Motion for Summary Judgment is granted.

II.     Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322-23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc*., the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).   Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

III.    Analysis

Plaintiff was transferred to ECI on August 16, 2006.  On August 29, 2006, inmate Christopher Layfield was moved into Plaintiff's cell.  (Paper No. 18, Exs. 1 & 2).   They remained in the same cell until October 18, 2006, when Layfield was moved to another cell. (*Id*.).   On October 19, 2006, Sgt. Webster spoke with Plaintiff regarding some metal missing from Layfield's locker.  (*Id*., Ex. 3, Webster Decl.).   Plaintiff informed Webster that he had no personal knowledge about Layfield's locker and, as a result of this statement, Webster dismissed Plaintiff to return to his cell.   (*Id*.).   Webster then ordered two ECI officers to search both Plaintiff and Layfield's cells.  (*Id*.).   The search resulted in the recovery of seven pieces of metal from Layfield's cell, two of which had already been made into weapons.  (*Id*.).

On October 30, 2006, Plaintiff was assaulted with hot liquid by an unknown inmate in a housing unit day room. (*Id*., Ex. 4). The assault caused injuries to the left side of Plaintiff's face, ear, neck, and the front of his chest and abdominal area. (Paper No. 18, Ex. 4). Plaintiff arrived in the ECI-East Compound Dispensary at 4:00 a.m., at which time his burns were cleaned, cream was applied to the infected areas, and pain medication was provided. (*Id*.) The progress note completed by Nurse Bennett noted that no blisters were visable, but Plaintiff's skin was very irritated and he was complaining that his head and ear burned more than the other infected areas. (*Id*., Exs. 4 & 6). He was placed on a list to be seen by a physician. (*Id*., Ex. 4). Plaintiff also gave a statement and had photographs taken in an office area outside East Dispensary at approximately 4:11 a.m. (*Id*., Exs. 4 & 5). He indicated that he thought the attack may have occurred because Layfield thought Plaintiff said something about the knives Layfield had in his possession. (*Id*.).

After receiving initial medical treatment, Plaintiff was classified to administrative segregation for 120 days pending investigation into the incident.[1] (*Id*., Ex. 8). Physically, however, Plaintiff was housed in the ECI infirmary, where he remained until November 9, 2006. (*Id*., Ex. 9). Notes during that time period show that Plaintiff had some blistered areas and was treated for second degree burns to his neck and the anterior portion of his chest. (*Id*., Exs. 7 & 9).

On November 6, 2006, case management personnel recommended Plaintiff be removed from administrative segregation and transferred to the ECI west compound. (*Id*., Ex. 8). This recommendation was approved on November 17, 2006, and Plaintiff was transferred on November 21, 2006. (*Id*.).

---

[1] It was believed that the assault might have been related to Plaintiff's former cellmate Layfield and the knives he possessed. (Paper No. 18, Ex. 4).

4

To meet the standard for establishing a failure-to-protect damage claim under the Eighth Amendment, Plaintiff must, at a minimum, present facts alleging that Defendants knew of and disregarded an excessive risk to his health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).   The Court finds that Plaintiff has failed to prove that Sgt. Webster or other corrections staff were deliberately indifferent to his safety.

There is no dispute that Plaintiff was assaulted.  The assault, however, was a spontaneous incident and the inmate who attacked Plaintiff could not be identified.  Although it was suspected that the attack may have been connected to Plaintiff's former cellmate Christopher Layfield, no evidence confirmed that suspicion.   Defendant Webster denies under oath that he spoke with Plaintiff to purposely place him in harm's way.  He claims that he spoke with Plaintiff and conducted the cell searches for weapons in the interests of safety and prison security, and their actions prevented the weapons from being distributed and causing serious injury to ECI inmates or staff.   Webster further affirms that at no point after speaking to Plaintiff on October 18, 2006, did Plaintiff communicate safety concerns to him or to other correctional officers.

Plaintiff's original allegation that Webster's "negligence" caused him to be placed at risk is not supported by the evidence.  While to be sure Webster questioned Plaintiff in a supervisor's office, had him returned to his cell, and then had Plaintiff's and Layfield's cells searched, resulting in the discovery of metal pieces and homemade shanks in Layfield's cell, Plaintiff has failed to show that Webster's actions were undertaken in an effort to put him at risk or that he subsequently spoke to Webster about safety concerns related to this episode prior to the assault.  Indeed, the Court finds that Webster's actions  were appropriate given the initial discovery of

missing pieces of metal in a locker in Plaintiff's cell previously used by Layfield. Plaintiff's assault ten days later was unfortunate, but prisons are inherently dangerous places and omnipresent risk of inmate-on-inmate assault exists. *See Kane v. Winn*, 319 F.Supp.2d 162, 188 (D. Mass. 2004). There is nothing in the record, however, showing that Webster intentionally put Plaintiff at risk for an assault.

Further, in naming the ECI Warden as a defendant, Plaintiff must show that Green was personally involved in the alleged violation. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994).[2] In failing to show the Warden's personal or supervisory involvement in the October 30, 2006 incident, Plaintiff's claim against Green cannot survive Eighth Amendment scrutiny.[3]

IV. Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be granted. A separate Order shall be entered reflecting the ruling set out in this Memorandum Opinion.

Date:   September 28, 2007                /s/_____
                                          RICHARD D. BENNETT
                                          UNITED STATES DISTRICT JUDGE

---

[2] Alternatively, to establish supervisory liability, Plaintiff must show that: (1) Green had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) Green's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between Green's inaction and the particular constitutional injury suffered by Plaintiff. *See Shaw*, 13 F.3d at 799.

[3] Defendants do not respond to Plaintiff's medical complaint that he was not immediately seen by health care staff after the assault   There is no allegation, however, that either Defendant stopped Plaintiff from obtaining treatment or was otherwise involved in his care. In any event, the record shows that Plaintiff received care for his burns by a prison nurse in the compound dispensary within minutes of the assault and was transferred to the ECI infirmary where he remained for approximately 10 days. No Eighth Amendment violation has been established.